**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

JAMES P. GOGOLEWSKI, JR.                                                            PETITIONER

V.

CIVIL ACTION NO. 3:02-cv-1778WS
CRIMINAL NO. 3:01-cr-159WS

UNITED STATES OF AMERICA                                                          RESPONDENT

**ORDER**

Before this court is the petitioner's motion asking this court to vacate and set aside, or to correct his sentence, said motion filed pursuant to Title 28 U.S.C. § 2255.[1] The statute of limitation for filing habeas corpus claims is one year in accordance with Title 28 U.S.C. § 2244(d)(1).[2] Inasmuch as the petitioner filed the instant petition within one year of the date his conviction became final, the petitioner timely filed this petition.

**BACKGROUND**

The petitioner pled guilty to three counts of Use of a Communication Facility to Facilitate the Commission of a Drug Trafficking Crime in violation of Title 21 U.S.C.

---

[1]Title 28 U.S.C. § 2255 provides in part that, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move to vacate, set aside or correct the sentence."

[2]The Antiterrorism and Effective Death Penalty Act (AEDPA) limits the time period allowed for filing a federal habeas corpus action. Section 2244(d)(1)(A) sets forth the general rule that a federal habeas petition must be filed within one year after the petitioner's conviction becomes final. Flanagan v. Johnson,154 F.3d 196, 198 (5th Cir. 1998).

§ 843(b),[3] specifically the trafficking of Lysergic Acid Diethylamide (LSD).  He agreed to accept a sentence of 144 months[4] in the custody of the Bureau of Prisons, as reflected in the Memorandum of Understanding executed by petitioner and the United States.[5]  This court accepted the petitioner's guilty plea and subsequently sentenced him to 48 months imprisonment for each of the three counts to run consecutively, or 144 months.

This court applied the then mandatory United States Sentencing Guidelines, § 2D1.6, which provided that the base offense level for a conviction under Title 21 U.S.C. §843(b) is "the offense level applicable to the underlying offense."  The base offense level for drug trafficking offenses is determined by the quantity of drugs involved.  *See* § 2D1.1[6] of the United States Sentencing Guidelines.

---

[3]Title 21 U.S.C. § 843(b) provides that, "[i]t shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter.  Each separate use of a communication facility shall be a separate offense under this subsection.  For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication."

[4]The petitioner's base offense level was determined in accordance with § 2D1.1(a) of the U.S.S.G.which provides that the base offense level  is the level specified by the Drug Quantity Table in subsection (c).  The petitioner's base level was 34, based on less than 100 grams, but more than 30 grams of LSD.  The base level was reduced 3 levels for acceptance of responsibility to 31.  The guideline range for the offense level of 31 is incarceration for 135 to 168 months.  Because the statutory maximum under § 834(b) is 48 months, and three counts at 48 months each is 144 months, the guideline range was adjusted to 135 to 144 months.

[5]As the result of a Drug Enforcement Administration (DEA) investigation of one Steven Blackwell which led to the seizure of an amount of LSD, the DEA learned that the petitioner in this case was the source of the LSD.  The petitioner resided in California and shipped LSD from fictitious addresses to points throughout the United States.

[6]Section 2D1.1(a)(3) says the base offense level is the one specified in the Drug Quantity Table set forth in subsection (c).

The Memorandum of Understanding contained a clause reflecting the parties' stipulation relative to the amount of LSD involved, specifically 96.1 grams. According to subsection (c) of § 2D1.1, where at least 30 grams but less than 100 grams of LSD are involved, the base offense level is 34.

The Memorandum of Understanding also included several waivers. First, the petitioner expressly waived his right to appeal the sentence imposed by this court on any ground; secondly, he waived the right to wage a collateral attack upon his sentence under Title 28 U.S.C. § 2255; thirdly, he waived the right to seek attorney fees under the "Hyde Amendment," acknowledging that the position of the United States was not taken in bad faith in this case; and finally, the petitioner waived his right to request records pertaining to the investigation of his case.

Now, notwithstanding his agreement not to seek collateral relief from the sentence imposed, the petitioner has filed a § 2255 motion contending that he received ineffective assistance of counsel because, allegedly, his counsel had failed to research the holdings of the federal courts outside the Fifth Circuit and, as the result of that research, had failed accurately to predict that the United States Court of Appeals for the Fifth Circuit might adopt the holdings of other Circuits as its own juridical policy with regard to calculating the offense level for those persons being sentenced for crimes involving LSD. The petitioner contends that, as the result of the alleged ineffectiveness of his counsel, his sentence was imposed incorrectly because this court improperly accepted the parties' stipulation in the Memorandum of Understanding regarding the amount of Lysergic Acid Diethylamide (LSD) for sentencing purposes. The stipulated amount of LSD, says the petitioner, included the

weight of the vodka in which it was contained.  According to the petitioner, an "incorrect sentence" opens the door to this challenge under § 2255, notwithstanding his agreement not to seek collateral relief.

Petitioner says his counsel failed to offer the decisions of *United States v. Camacho*, 261 F.3d 1071, 1074 (11th Cir. 2001);  *United States v. Ingram*, 67 F.3d 126, 128 (6th Cir. 1995);  and *United States v. Turner*, 59 F.3d 481, 485 (4th Cir. 1995), for this court to consider in advance of the petitioner's sentencing, decisions which address the amount of LSD to be applied to the determination of one's base offense level for sentencing.  The petitioner now contends that his guilty plea was not knowing and voluntary, and should be modified accordingly, because these decisions were "out there" and counsel should have presented them.   Failure to do so was, according to the petitioner, ineffective assistance.

Of course, even if the petitioner's attorney had presented these cases for this court's consideration, this court would have been bound only by decisions of the Fifth Circuit and the United States Supreme Court.  *See Peregoy v. Amoco Production Company, a Division of Standard Oil of Indiana*, 742 F.Supp. 372, 375 (E.D. Tex. 1990).  Decisions of other Circuit Courts are merely persuasive authority and not binding on this court.  *See Garcia v. Amfels, Inc.*, 254 F.3d 585, 588 (5th Cir. 2001) (noting that decisions of other Circuit Courts are persuasive, not binding).  The three decisions urged by the petitioner, *Comacho*, *Ingram*, and *Turner*,  hold that when LSD is contained in a liquid solution (like vodka), the weight of the pure LSD alone should be used to determine the base offense level for the purpose of sentencing.  At the

time of the petitioner's sentence, the Fifth Circuit had not adopted these decisions in any of its own holdings and, in the absence of Fifth Circuit blessing, this court was under no obligation to adopt these holdings, even if they had been presented.[7]

### THE FIFTH CIRCUIT ADOPTS *COMACHO, INGRAM AND TURNER*

On May 23, 2002, six months after the petitioner in the instant case was sentenced by this court, the Fifth Circuit handed down its decision in *United States v. Morgan,* 293 F.3d 270 (5th Cir. 2002). The *Morgan* Court reversed and remanded a guilty plea for conspiracy to possess and possession of LSD, and joined *Comacho*, *Ingram* and *Turner*, and their respective holdings that "when the controlled substance is LSD contained in a liquid solution, the weight of the pure LSD alone should be used in determining the base offense level under the Guidelines."

The *Morgan* matter arrived at the Fifth Circuit on direct appeal of the defendant's sentence and the case was remanded for imposition of a mandatory 120 month (ten-year) sentence under Title 21 U.S.C. § 841(b)(1) (A)(v)[8] because 10 grams of LSD were involved in the conspiracy charges. In the instant case, the petitioner was convicted for trafficking under Title 21 U.S.C. § 843(b), not for conspiracy.

Two weeks after the *Morgan* decision, the Fifth Circuit decided *United States v. Keresztury*, 293 F.3d 750 (5th Cir. 2002), ruling that *Morgan* controlled and that only

---

[7]Of course, the petitioner does not argue, and could not know, whether this court indeed was aware of these decisions, but simply treated them as non-binding precedent.

[8]Title 21 U.S.C. § 841(b)(1)(A)(v) provides that, "[i]n the case of a violation of subsection (a) of this section involving – ... 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD); ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life ... ."

pure LSD should be considered when calculating one's base offense level. Observing that neither the preparer of the Presentence Investigation Report ("PSR") nor the sentencing court had had the benefit of the *Morgan* opinion when sentence had been imposed, the *Keresztury* Court found understandable the district court's inclusion of the vodka with the LSD for the purpose of calculating the base offense level because this was the standing policy prior to *Morgan*. Nevertheless, the *Keresztury* Court held that *Morgan* controlled, so, inclusion of the weight of the vodka in determining the base offense level was deemed reversible error. *Id.*, at 758.

Thus, in these two decisions, *Morgan* and *Keresztury*, the United States Court of Appeals for the Fifth Circuit joined a shift in juridical doctrine just six months after the agreed sentence in the instant case had been imposed.[9] Moreover, the *Keresztury* decision, which found that only the pure LSD, not the mixture, should be counted for purposes of sentencing, applied *Morgan* retroactively.

In order to grant the relief sought by the petitioner in the instant case, this court must determine if counsel's assistance was not effective. In the event defense counsel's assistance in this case meets the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the next question is whether the petitioner should be entitled to relief from his sentence based

---

[9]*See also United States v. Jensen*, 46 Fed.Appx. 226 (5th Cir. 2002), noting that in *Morgan*, the Fifth Circuit held that "when the controlled substance is LSD contained in a liquid solution, the weight of the pure LSD alone should be used in determining the base offense level under the Guidelines." The Court concluded that the *Jensen* district court had erred in using the total weight of the LSD and the liquid to determine the base offense level. Accordingly, the sentence was vacated and the case was remanded for resentencing consistent with *Morgan*.

on *Morgan* and *Keresztury*. Then, this court would have to determine what amount of pure LSD was present for the purpose of calculating a new base offense level for resentencing, which might pose a problem if the original samples are no longer available.

The cornerstone argument of the United States is that this petition is barred procedurally. Further, says the United States, the terms of the Memorandum of Understanding are now binding, thereby precluding the petitioner from seeking habeas corpus relief.

## THE MEMORANDUM OF UNDERSTANDING

The United States contends that this petition should be considered procedurally barred. The United States points to the petitioner's waivers and his agreement not to seek collateral relief, promises which are contained in the aforesaid Memorandum of Understanding entered into between the petitioner and the United States.

Plea bargain agreements, such as the Memorandum of Understanding here, are contractual in nature and are to be construed accordingly." *United States v. Moulder*, 141 F.3d 568, 571 (5th Cir. 1998), citing *Hentz v. Hargett*, 71 F.3d 1169, 1173 (5th Cir.), *cert. denied*, 517 U.S. 1225, 116 S.Ct. 1858, 134 L.Ed.2d 957 (1996); and *United States v. Ballis*, 28 F.3d 1399, 1409 (5th Cir. 1994). An informed and voluntary waiver of post-conviction relief is effective to bar such relief, and the appropriateness of such waivers in proper circumstances is beyond question. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994), citing *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993), *cert. denied*, 508 U.S. 979, 113 S.Ct.

2980, 125 L.Ed.2d 677 (1993); however, such waivers may not always apply to collateral attacks based upon ineffective assistance of counsel. *Id.* at 653; and see *United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995) (dismissal of an appeal based on a waiver in the plea agreement is inappropriate where the defendant's motion to withdraw the plea incorporates a claim that the waiver was tainted by ineffective assistance of counsel). Ostensibly having informed himself of this exception, the petitioner now seeks to squeeze his argument into this exception and, thereby, to sidestep the government's argument on procedural bar.

## THE MATTER OF EFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail on an ineffective assistance of counsel claim, the petitioner must be able to show: (1), that his counsel's performance fell below an objective standard of reasonableness; and (2), that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both prongs of the Strickland test must be met to demonstrate ineffective assistance. *Id.* at 697. To establish the first prong, petitioner must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. It is not enough to show that some, or even most, defense lawyers would have handled the case differently. The inquiry is how defense counsel's performance is measured by an objective yardstick of reasonableness. *Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir.), *cert. denied*, 493 U.S. 831, 110 S.Ct. 102, 107 L.Ed.2d 66 (1989).

For the second prong, petitioner must show that his counsel's errors were so serious as to have "deprive[d] him of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  If the petitioner cannot show that the ineffectiveness of counsel deprived him of a substantive or procedural right to which the law entitles him, he must show that the result of the proceeding was fundamentally unfair or unreliable. *Williams v. Taylor*, 529 U.S. 362, 392- 93, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The record now before this court is more than adequate fairly to dispose of the claim of ineffective assistance.  Thus, no further inquiry is necessary. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir.1983), *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1984).

The basis for the petitioner's claim of ineffective assistance is the alleged failure of his counsel to anticipate that the Fifth Circuit would change its position on the method to be used to calculate LSD quantities in liquid solutions.  This assertion has problems.  A failure to anticipate shifts in legal doctrine within the jurisdiction in which one practices cannot be condemned as objectively deficient.  *See United States v. Smith*, 241 F.3d 546, 548 (7th Cir. 2001);  *see also United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (failure to anticipate changes in the sentencing guidelines – does not meet any of the standards for collateral attack);  and also *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 2241, 60 L.Ed.2d 805 (1979) (claim that judge was incorrect in assumptions about future course of parole guidelines not cognizable under § 2255).

This court is persuaded by the aforementioned law and facts that the performance of petitioner's attorney did not fall below an objective standard of reasonableness. Phrased differently, this court is not persuaded that the petitioner's attorney provided him ineffective assistance in this case. An observation by the Fifth Circuit supports this conclusion. In *United States v. Jensen*, 46 Fed.Appx. 226 (5th Cir. 2002), the Fifth Circuit stated that a court's inclusion of the medium or mixture containing the LSD in the computation of the base offense level is understandable prior to the *Morgan* decision. Consequently, the relief the petitioner seeks cannot rest on his assertion that he received ineffective assistance counsel at sentencing.

## THE GUILTY PLEA WAS KNOWING AND VOLUNTARY

When a defendant in a criminal case enters a guilty plea pursuant to a plea agreement, the defendant waives a number of fundamental constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The Fourteenth Amendment Due Process Clause[10] imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978), citing *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was

---

[10]Amendment 14, Section 1 of the Constitution of the United States provides that, "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, *without due process of law;* nor deny to any person within its jurisdiction the equal protection of the laws.

voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n. 22 (5th Cir. 2000). Additionally, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record." *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).

The petitioner in the instant case entered a plea of guilty and agreed not to appeal his conviction nor seek to attack it collaterally. A guilty plea is more than a mere confession; it is an admission that the defendant committed the charged offenses, in this case, three counts of using a communications device to facilitate a drug deal. *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991), citing *North Carolina v. Alford*, 400 U.S. 25, 32, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). As a general rule, therefore, a convicted defendant may not collaterally attack a voluntary and intelligent guilty plea. *Id.*, citing *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984); *Tollett v. Henderson*, 411 U.S. 258, 266-67, 93 S.Ct. 1602, 1607-08, 36 L.Ed.2d 235 (1973).

Guilty pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). None of these elements is present in the instant case. Furthermore, a plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

Here, the evidence clearly shows that the petitioner's several waivers were knowing and voluntary. The petitioner's signed plea agreement contains the four express waivers referred to above, and a stipulation that the amount of LSD involved in these communications was 96.1 grams. During the petitioner's plea hearing, this court summarized the indictment and noted the maximum sentences under the applicable statute. The petitioner indicated that he understood the ramifications of pleading guilty and agreed to be sentenced to the statutory maximum of 48 months on each of three counts alleging violations of Title 21 U.S.C. § 843(b). This court also advised the petitioner of the terms of the plea agreement, including the waiver of his right to challenge his sentence in any court for any reason, and determined that the petitioner understood the nature of the constitutional rights that he was forfeiting.[11]

The facts herein indisputably show that the petitioner entered a voluntary and intelligent plea. *See Frank v. United States*, 501 F.2d 173, 175 (5th Cir. 1973). This court concludes, then, that the guilty plea in this case meets the test of due process and is contractually valid as well. *See United States v. Cuevas - Andrade*, 232 F.3d 440, 446 (5th Cir. 2000) (the Fifth Circuit will enforce a knowing and voluntary plea).

## **RETROACTIVITY OF *MORGAN***

The computation of the petitioner's sentence was reached by a procedure now held by the United States Court of Appeals for the Fifth Circuit to be reversible error as dictated by the *Morgan* and *Keresztury* decisions. Pursuant to *Keresztury*, *Morgan* is

---

[11]Rule 11(c)(1) of the Federal Rules of Criminal Procedure provides that, "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ... the nature of the charge to which the plea is offered."

applied retroactively. So, the question now is whether the petitioner is entitled to modification of his sentence pursuant to the jurisprudence relative to retroactive application of case decisions.

In *Teague v. Lane*,[12] 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the United States Supreme Court held that new constitutional rules of criminal procedure that had not been announced at the time the defendant's conviction became final cannot be applied retroactively on collateral review, unless they fit within one of two narrow exceptions. First, *Teague's* standard of non-retroactivity does not apply to substantive rules. *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 2522-23, 159 L.Ed.2d 442 (2004). Substantive rules include "decisions that narrow the scope of a criminal statute by interpreting its terms," as well as "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* In *Summerlin*, the United States Supreme Court addressed the question of whether a substantive rule was established by *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which held that "a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty." The *Summerlin* Court asserted that because Ring did not "alter the range of conduct ... subjected to the death penalty," but simply "altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge

---

[12]The *Teague* non-retroactivity doctrine applies to habeas corpus proceedings under both Title 28 U.S.C. § 2254 and § 2255. *United States v. Gentry*, 432 F.3d 600, 602-03 (5th Cir. 2005).

13

find the essential facts bearing on punishment," the rule was a "prototypical procedural rule[.]"  *Summerlin*, 124 S.Ct. at 2523.

In the two decisions affecting the instant case, *United States v. Morgan*, 292 F.3d 460 (5th Cir. 2002) and *United States v. Keresztury*, 293 F.3d 750 (5th Cir. 2002), the Fifth Circuit held that "when the controlled substance is LSD contained in a liquid solution, the weight of the pure LSD alone should be used in determining the base offense level under the [Sentencing] Guidelines."  *Morgan,* at 464.  These decisions present no constitutional rule of criminal procedure which narrows the scope of any criminal statute or places any particular conduct or persons beyond the government's power to punish.  Instead they simply clarify that the weight of the pure LSD alone should be used in determining what a base offense level under the Sentencing Guidelines might be.

Next, "watershed" rules implicating the fundamental fairness and accuracy of a criminal proceeding" avoid the application of *Teague's* standard.  *Summerlin*, 542 U.S. ___, 124 S.Ct. at 2523, citing *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (quoting *Teague*, 489 U.S. at 311).  To fit within the "watershed" exception, a new rule must meet two requirements: (1) infringement of the rule must "seriously diminish the likelihood of obtaining an accurate conviction," and (2) the rule must "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding."  *Tyler v. Cain*, 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001); *Sawyer v. Smith*, 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).  An example of a watershed rule which might fit squarely within the

second *Teague* exception is the rule in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which established the affirmative right to counsel in all felony cases. *See Beard v. Banks*, 542 U.S. 406, 415-16, 124 S.Ct. 2504, 2513-14, 159 L.Ed.2d 494 (2004), commenting that the United States Supreme Court has yet to find a new rule which fits within the "watershed" category, but that the holding in *Gideon* "might" be such a rule.

Petitioner's Memorandum of Understanding, specifically paragraphs 16(a) and (b), impose an insurmountable barrier against any retroactive application. These paragraphs provide as follows:

> 16. **Waivers.** The defendant, knowing and understanding all of the matters aforesaid including the maximum possible penalty that could be imposed, and being advised of his or her rights to remain silent, to trial by jury, to subpoena witnesses on his own behalf, to confront the witnesses against him, and to appeal the conviction and sentence, in exchange for the recommendations and concessions made by the United States Attorney's Office in this plea agreement **hereby expressly waives the above rights and the rights to:**
>
> > a.  appeal the sentence imposed in this case, or the manner in which that sentence was imposed, on the grounds set forth in 18 U.S.C. § 3742, or on any ground whatsoever; and
> >
> > b.  contest the sentence or the manner in which the sentence was imposed in any post-conviction proceeding, including but not limited to, a motion brought pursuant to 28 U.S.C. § 2255.

Fifth Circuit law on the validity of these pronouncements is clear. *See United States v. Wilkes*, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights); *United States v. McKinney*, 406 F.3d 744 (5th Cir. 2005) (enforcing, post-*Booker*, a waiver of appeal rights that was signed prior to the

15

issuance of *Booker*).  Waiver is knowing if a defendant understands he had a right, and understood he was giving it up.  *Wilkes*, 20 F.3d at 653.  A defendant's sworn statements in open court are entitled to a strong presumption of truthfulness.  *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001); *Wilkes*, 20 F.3d at 653. Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy."  *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).

This court is not persuaded that petitioner's sentence should be reviewed retroactively under *Morgan* and *Keresztury*.  Voluntary waivers of collateral review are typically enforced.  *United States v. White*, 307 F.3d 336, 344 (5th Cir. 2002).  Only claims of ineffective assistance of counsel directly affecting the validity of the waiver or the plea itself survive a knowing and voluntary waiver.  *Id.*, 307 F.3d at 343.  Here the petitioner's claim of ineffective assistance goes only to counsel's inability to foresee the Fifth Circuit's rulings in *Morgan* and *Keresztury*.  This lack of prescience does not constitute constitutional error which would require this court to ignore the petitioner's agreement with the government and vacate his conviction.

## **CONCLUSION**

The petitioner is not entitled to be resentenced because of the Fifth Circuit's holdings in *United States v. Morgan* and *United States v. Keresztury.*  Therefore, the instant petition for habeas corpus relief under Title 28 U.S.C. § 2255 is denied.

**SO ORDERED**, this the 24th day of July, 2008.

**s/ HENRY T. WINGATE
CHIEF UNITED STATES DISTRICT JUDGE**

United States v. Gogolewski, Criminal No. 3:01-cr-159WS:  Order denying motion to vacate